**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dean G Cameron, | No. CV-15-00963-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Avalon Mobility Incorporated, et al., | |
| Defendants. | |

Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. 45) and Defendants' Motion for Summary Judgment (Doc. 47). The Court now rules on the motions.

## I.    BACKGROUND

On April 14, 2017, Plaintiff filed the pending Motion for Summary Judgment (Doc. 45). At the Court's request, Defendants filed a Response on May 15, 2017 (Doc. 52). Plaintiff then filed a Reply on May 18, 2017 (Doc. 55).

On April 14, 2017, Defendants also filed their pending Motion for Summary Judgment (Doc. 47). At the Court's request, Plaintiff filed a Response on April 28, 2017 (Doc. 49). Defendants then filed a Reply on May 15, 2017 (Doc. 51).

The Complaint in this case alleges that Defendants violated the Fair Labor Standards Act ("FLSA") for failure and/or refusal to pay overtime to Plaintiff. (Doc. 1).

### A.    Undisputed Material Facts

Defendant Avalon Mobility, Inc., d/b/a Desert Sun Moving ("Avalon Mobility") is a moving company owned by Defendant Brenda Huffman and organized as a corporation in Arizona with gross income exceeding $500,000 per year. (Plaintiff's Statement of Facts in Support of Motion for Summary Judgment ("PSOF"), Doc. 46 at ¶¶ 1, 3; Defendants' Response to Plaintiff's Statement of Facts and Controverting Statement of Facts ("DCSOF"), Doc. 53 at ¶¶ 1, 3; Doc. 46-3 at 5-6). Avalon Mobility is headquartered in Tucson, Arizona and maintains an office and warehouse in Phoenix, Arizona. (PSOF at ¶¶ 1; DCSOF at ¶¶ 1). Avalon Mobility and Brenda Huffman (together, "Defendants") employed Plaintiff Dean Cameron ("Plaintiff") at Defendants' Phoenix location with the title of "Warehouse Manager" from approximately June 13, 2014 to approximately March 4, 2015. (PSOF at ¶¶ 5; DCSOF at ¶¶ 5; Plaintiff's Controverting Statement of Facts in Support of Response to Defendants' Motion for Summary Judgment ("PCSOF"), Doc. 50 at ¶¶ 12).

Throughout the duration of his employment with Defendants, Plaintiff received a flat weekly salary of $550 regardless of the number of hours that Plaintiff worked each week. (PSOF at ¶¶ 10; DCSOF at ¶¶ 10). Defendants did not use a time clock to maintain an exact record of the hours Plaintiff worked. (PSOF at ¶¶ 16; DCSOF at ¶¶ 16). According to Defendants, Plaintiff spent approximately twenty percent of his time performing manual labor and the remainder of his time operating a forklift in some capacity. (PSOF at ¶¶ 7-8; DCSOF at ¶¶ 7-8). Both parties agree that Plaintiff's duties included "the care, placement, organization, inventory, cataloging, loading, unloading, and damage claims relating to warehoused shipments and maintenance of the [w]arehouse." (Defendants' Statement of Facts in Support of Motion for Summary Judgment ("DSOF"), Doc. 48 at ¶¶ 23; PCSOF at ¶¶ 23). Plaintiff prepared a resume later found on Defendants' computer, which describes his duties and responsibilities as follows:

- Select product to be distributed for the day.
- Stock incoming product.
- Maintain production rate in a fast paced work environment

- Prepare itinerary for drivers delivery and pickups
- Answering calls from carriers and customers
- Scheduling new deliveries and pack jobs
- Train new employees
- Supervise warehouse employees
- Oversee daily upkeep in warehouse
- Weigh all outbound deliveries
- Prepare paperwork for payroll
- Make inbound deliveries and local moves when short staffed

(DSOF at ¶¶ 26; PCSOF at ¶¶ 26).

During his employment, Plaintiff, at times, worked with one full-time Warehouse Assistant and one part-time Warehouse Assistant with only partial overlap. (DSOF at ¶¶ 29; PCSOF at ¶¶ 29). Who had oversight responsibility for these employees and whether Plaintiff supervised any others who occasionally performed work in the warehouse is disputed. (DSOF at ¶¶ 29-30; PCSOF at ¶¶ 29-30). During his employment with Defendants, Plaintiff did not "recommend to general management hiring, disciplinary action, or termination of any employee." (DSOF at ¶¶ 33; PCSOF at ¶¶ 33).

### B. Disputed Material Facts

#### 1. Plaintiff's Specific Employment and Oversight Duties

In addition to the undisputed facts outlined above, Plaintiff alleges and Defendants dispute that "Plaintiff's primary duty was operating a forklift." (PSOF at ¶¶ 9; DCSOF at ¶¶ 9). Alternatively, Defendants allege and Plaintiff dispute that "Plaintiff's primary duty was to manage the warehouse and using the forklift was one of his tools with which to accomplish that." (DCSOF at ¶¶ 9; PSOF at ¶¶ 9; PCSOF at ¶¶ 23). Defendants rely on Plaintiff's resume as an accurate, if incomplete, description of Plaintiff's employment duties, but Plaintiff disputes that bulleted contents of his resume are an accurate description of his duties. (DSOF at ¶¶ 26; PCSOF at ¶¶ 26).

Plaintiff further alleges that he did not have supervisory authority over any of Defendants' other employees. (PSOF at ¶¶ 21). Defendants contend that Plaintiff not only supervised one full-time and one part-time warehouse staff member, but also five to eight drivers and helpers who worked in the warehouse at various times. (DCSOF at ¶¶ 21).

Defendants also contend and Plaintiff disputes that Plaintiff had the authority and duty to make personnel recommendations to management—including the need to hire or terminate staff —but the need to make such recommendations never arose during Plaintiff's employment. (DSOF at ¶¶ 30, 32; PCSOF at ¶¶ 30, 32).

### 2. Plaintiff's Work Schedule

Plaintiff also alleges and Defendants dispute that Plaintiff worked over forty hours nearly every week of his employment with Defendants. (PSOF at ¶¶ 11; DCSOF at ¶¶ 11). Defendants maintain that Plaintiff's work schedule was Monday through Friday from 7 a.m. to 4 p.m. (less one hour for lunch) and every other Saturday from 7 a.m. to 1 p.m., totalling forty or forty-six hours per week (DCSOF at ¶¶ 13). Plaintiff provides that his work schedule was Monday through Friday from 6 a.m. to 5 p.m. and every other Saturday from 6 a.m. to 12 p.m. for an estimated fifty-five or sixty-one hours per week. (PSOF at ¶¶ 14-16; Doc. 46-1 at 7-8). Defendants dispute that this calculation is a "good faith" attempt to estimate hours worked because Plaintiff did not account for any days where he did not work at all, such as holidays or sick days. (DCSOF at ¶¶ 11, 22).

## II. SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

## III. FLSA OVERTIME REQUIREMENTS

The FLSA generally requires employers to pay employees one and one-half times their regular hourly rate of pay for hours worked in excess of forty per week ("overtime"). 29 U.S.C. § 207(a)(1). The FLSA creates a private cause of action for an employee against his employer to recover unpaid overtime wages and back pay "[i]f a covered employee is not paid the statutory wage." *Quinonez v. Reliable Auto Glass, LLC*,

No. CV-12-000452-PHX-GMS, 2012 WL 2848426, at *1–2 (D. Ariz. July 11, 2012) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011)). An FLSA claim includes the following three elements: (1) Plaintiff was employed by Defendants during the relevant time period; (2) Plaintiff was a covered employee; and (3) Defendants failed to pay Plaintiff overtime pay during the relevant time period. *Id.* at *2 (citations omitted). Anyone "employed in a bona fide executive, administrative, or professional capacity," however, is exempt from overtime pay requirements by the FLSA. 29 U.S.C. § 213(a)(1).

### A.   Defendants were Plaintiff's Employers

Under the FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Characteristics of an employer can include the power or responsibility to: (1) hire and fire employees, (2) supervise and control employee work schedules, (3) determine rates of compensation, and (4) maintain employment records. *See Hale v. State*, 993 F.2d 1387, 1394 (9th Cir. 1993). Here, both Avalon Mobility and Brenda Huffman, as the owner and President of Avalon Mobility, exercised those powers and responsibilities over Plaintiff. (PSOF at ¶¶ 2-4; DCSOF at ¶¶ 2-3; *see also* Doc. 46-3 at 16-18). Accordingly, the Court finds that both Avalon Mobility and Huffman qualify as Plaintiff's employers as a matter of law.

### B.   Plaintiff was a Covered Employee

Plaintiff qualifies as a covered employee under the FLSA through his employer if he was "employed in an enterprise engaged in commerce or in the production of goods for commerce." *Zorich v. Long Beach Fire Dept. & Ambulance Serv., Inc.*, 118 F.3d 682, 684 (9th Cir. 1997). The FLSA defines "enterprise engaged in commerce or in the production of goods for commerce" to include "an enterprise whose annual gross volume of sales made or business done is not less than $500,000." *Id.* (citing 29 U.S.C. § 203(s)(1)(A)(ii)). The parties agree that Defendants met this threshold dollar requirement during both years in which Plaintiff was employed by Defendants and, therefore, Plaintiff

qualifies as a covered employee. (Doc. 46-3 at 5-6).

## C. Defendants Paid Plaintiff a Weekly Salary

Both parties agree that Defendants compensated Plaintiff with a flat weekly salary of $550 regardless of the number of hours that Plaintiff worked in a given week. (PSOF at ¶¶ 10; DSOF at ¶¶ 10). If Plaintiff did in fact work greater than forty hours in any week, Defendants admit that he was not compensated with overtime pay. (PSOF at ¶¶ 10. 12; DSOF at ¶¶ 10, 12). Defendants argue, however, that Plaintiff fits under an FLSA exemption, thus relieving them from any obligation to provide overtime pay to Plaintiff.

## D. FLSA Exemptions

The FLSA specifically exempts those employed in an "administrative" or "executive" capacity from overtime requirements, but does not define those terms in the Act. *See* 29 U.S.C. § 213(a)(1). Instead, the FLSA delegates broad rule-making authority to the Secretary of Labor to "define[] and delimit[]" what constitutes an administrative or executive capacity through regulations, which have "the force and effect of law." *See id.*; *see also Ridings v. Lane Cty., Or.*, 862 F.2d 231, 234 (9th Cir. 1988). The application of an FLSA exemption "is a matter of affirmative defense on which the employer has the burden of proof" as to whether the exemption applies. *Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1974) (citations omitted). The Ninth Circuit has further reasoned that "FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. Cty. of Santa Clara, Ca.*, 208 F.3d 1085, 1089 (9th Cir. 2000). Here, Defendants argue that Plaintiff was an exempt employee under both the administrative and executive exemptions.

### 1. Administrative Exemption

Under 29 C.F.R. § 541.200(a), a bona fide administrative employee is any employee:

> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate per week of not less than [$455] . . . ;
>
> (2) Whose primary duty is the performance of office or non-

manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (2014).

Here, the parties do not dispute that Defendants paid Plaintiff on a salary basis at a rate of $550 per week, thus satisfying the first requirement. (PSOF at ¶¶ 10; DSOF at ¶¶ 10). The parties do, however, dispute whether Defendants satisfy the remaining two requirements of the test.

### 2. Executive Exemption

Under 29 C.F.R. § 541.100(a), a bona fide executive employee is any employee:

(1) Compensated on a salary basis pursuant to § 541.600 at a rate per week of not less than [$455] . . . ;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

Again, the parties do not dispute that Defendants paid Plaintiff on a salary basis at a rate of $550 per week, thus satisfying the first requirement. (PSOF at ¶¶ 10; DSOF at ¶¶ 10). The parties do, however, dispute whether Defendants satisfy the remaining three requirements of the test.

In order to determine whether Plaintiff qualified as an exempt employee, the Court must conduct "a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir.

2012). In conducting this analysis, the Court will construe all disputed facts in the light most favorable to the non-moving party in analyzing Plaintiff's and Defendants' respective motions for summary judgment. *See Ellison*, 357 F.3d at 1075.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff argues that Defendants fail to fit Plaintiff under either the administrative or executive exemption. (*See* Doc. 45 at 11-13). If that is the case, then Defendants owe Plaintiff overtime pay consistent with FLSA requirements.

### A. Administrative Exemption

Plaintiff argues that Defendants fail to meet requirements two and three of the administrative exemption because Plaintiff's primary duty was operating a forklift. (*See* Doc. 45 at 12). In furtherance of this argument, Plaintiff contends that operating a forklift is manual labor unrelated to Defendants' general business operations that does not require the exercise of discretion and independent judgment over matters of significance. (*See id*. at 12-13).

### 1. Primary Duty

The relevant Department of Labor (DOL) regulation provides, in pertinent part:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

As such, the amount of time an employee spends on exempt and non-exempt work "can be a useful guide in determining whether exempt work is the primary duty of an employee," but time alone is not the sole test in evaluating an employee's primary duty. *Id*. Rather, "nothing in this section requires that exempt employees spend more than

[fifty] percent of their time performing exempt work." *Id.*

In interpreting the primary duty requirement, the Ninth Circuit has reasoned that a court should "not presume that [an] exemption fails merely because the proportion of time spent on exempt managerial tasks is less than fifty percent, where, as here, managerial duties are packaged in employment with non-managerial tasks, and the management function cannot readily and economically be separated from the nonexempt tasks." *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113-14 (9th Cir. 2001) (holding that employees qualified as exempt even though the employees spent ninety percent of their time on nonexempt tasks because "other relevant factors established that the [employees'] primary duty was management of [a recreational vehicle] park"). Similarly, the Court does not presume here that Plaintiff's primary duty was manual work unrelated to Defendants' general business operations simply because Plaintiff operated a forklift during the majority of his time at work.

## 2. Requirement (2): Non-manual Work, Business Operations

DOL regulations provide that an employee's work under the administrative exemption must be "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201. The relevant regulation gives some examples of roles that generally qualify for the administrative exemption, but is silent as to whether the role of warehouse manager generally qualifies for the exemption. 29 C.F.R. § 541.203 (explaining that an executive assistant or human resources manager generally qualifies for the exemption, but a safety inspector or employee who grades lumber typically does not).[1] Courts have previously found warehouse managers to qualify for the administrative exemption under the

---

[1] The responsibilities of an exempt employee should include more than simply "work [that] involves the use of skills and technical abilities in gathering factual information, applying known standards or prescribed procedures, determining which procedure to follow, or determining whether prescribed standards or criteria are met." 29 C.F.R. § 541.203. The regulation requires that employees do more than follow a script or preset guidelines without exercising independent judgment and decision-making authority. *See, e.g.*, *Eli Lilly & Co.*, 679 F.3d at 574.

circumstances presented therein. *See, e.g., Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 111 (N.D. Ill. 2013) (holding that a warehouse manager fell within the scope of the administrative exemption even though "he performed manual labor such as operating forklifts, unloading trucks, and moving equipment"); *see also infra* note 3 (other courts have also routinely found warehouse managers to fit within the executive exemption without having to reach the question of whether the warehouse manager therein fit within the administrative exemption).

Here, Defendants stated that Plaintiff spent approximately twenty percent of his time performing manual labor and the remainder of his time operating a forklift. (*Compare* PSOF at ¶¶ 7-9 *with* DCSOF at ¶¶ 7-9 (citing Doc. 46-3 at 12-13)). Defendants explain, however, that Plaintiff's primary duty was to manage the warehouse and using the forklift was a tool by which Plaintiff fulfilled that duty. (*See* Doc. 52 at 3-4; *see also* DCSOF at ¶¶ 9). Specifically, Plaintiff oversaw the "receipt, storage and delivery of clients' goods" and ensured Defendants remained in compliance with client storage contracts. (Doc. 52 at 4). To this end, Plaintiff independently determined where to place and organize shipments in an efficient, accessible manner within Defendants' 35,000 square foot warehouse (*See id*. at 5-6). Although Plaintiff used a forklift to fulfill his warehouse management duties, Plaintiff's cognitive, non-manual work could reasonably be his primary duty in this regard. (*See id*. at 4-5).

Even though Plaintiff's "managerial duties [were] packaged in employment with non-managerial tasks," these facts could support the conclusion that Plaintiff's primary duty was management of the warehouse. *See Baldwin*, 266 F.3d at 1114. Thus, Plaintiff has failed to establish that he is entitled to summary judgment on this theory. Further, Plaintiff has failed to establish that the duty of management of the warehouse is not directly related to Defendants' general business operations as a moving business. Accordingly, the Court finds that this fact-intensive inquiry presents a jury question as to whether Plaintiff's primary duty was the performance of non-manual work directly related to the management or general operations of his employer.

### 3. Requirement (3): Discretion over Matters of Significance

Next, Plaintiff disputes that his primary duty involved the use of "discretion and independent judgment" and that, even so, it was not with respect to "matters of significance." (Doc. 45 at 3-4). DOL regulations explain that the "exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202. "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id*. The relevant regulation lists several factors for a court to consider in evaluating this requirement, including an employee's level of autonomy, "free from immediate direction or supervision," and the extent to which an employee has authority over "matters that have significant financial impact." *Id*.

As reasoned above, Defendants argue that Plaintiff's ability to fulfill his primary duty of managing the warehouse and coordinate shipments depended heavily on his use of discretion and independent judgment. (*See* Doc. 52 at 3-4; *supra* Part IV(A)(2)). Defendants contend that the sheer size of the warehouse and volume of shipments that Plaintiff was charged with organizing forced Plaintiff to use his independent judgment in fulfilling his primary duty. (*See* Doc. 52 at 5-6). Although Plaintiff may have been "guided in these decisions based on factors outside of his control, such as length of time of storage, contractual terms, and governing regulations," this does not prove that he did not use his discretion and independent judgment. (Doc. 55 at 4). There is evidence that Plaintiff had to process shipment information and independently determine how and where to store specific shipments regardless of whether policy documents provided guidance on how to handle each shipment. (Doc. 52 at 4-5 (citing Doc. 54 at ¶¶ 5, 6, 11, 15-18)); *see also Baldwin*, 266 F.3d at 1115 (finding that employees exercised sufficient independent judgment even though employees "had to adhere to company policies [and] record completed tasks on checklists"). Thus, Plaintiff failed to establish as a matter of undisputed fact that he did not exercise independent judgment; therefore, a jury question

remains on this issue.

Finally, Plaintiff argues that even if Plaintiff's primary duty involved the use of discretion and independent judgment, "it was clearly not with respect to '*matters of significance*.'" (Doc. 55 at 3 (emphasis in original)). Plaintiff points out that a matter is not necessarily significant simply "because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 541.202. Defendants, however, provide evidence that Plaintiff's job had a significant impact on its ability to fulfill contractual obligations and provide its moving services in an efficient manner, in addition to impacting its ability to retain clients. *See* Doc. 52 at 4-5 (citing Doc. 54 at ¶¶ 5, 6, 11, 15-18)). The complexity brought about by the physical expansiveness of the warehouse and its importance to Defendants' business demonstrate that there is at least a dispute of fact as to whether its management required Plaintiff to exercise discretion and independent judgment with respect to matters of significance. Accordingly, there is a jury question as to whether Plaintiff falls under the FLSA's administrative exemption.

### B. Executive Exemption

Plaintiff also argues that Defendants fail to meet requirements two, three, and four of the executive exemption on several grounds discussed below. (*See* Doc. 45 at 11).[2]

### 1. Requirement (2): Management of the Enterprise

The relevant DOL regulation provides that "management" of the enterprise or a customarily recognized department thereof generally includes "activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control," among others. 29 C.F.R. § 541.102. Here,

---

[2] Defendants focused on the administrative exemption and only made brief reference to the executive exemption in Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 52). However, the issue of whether the executive exemption applies is fully briefed in Defendants' Motion for Summary Judgment (Doc. 47), Plaintiff's subsequent Response (Doc. 49), and Defendants' Reply (Doc. 51). Accordingly, the Court will consider the arguments made in and regarding Defendants' Motion for Summary Judgment when analyzing Plaintiff's Motion for Summary Judgment (Doc. 45).

Plaintiff argues that Defendants fail requirement two because his primary duty of "operating a forklift was not related in any way to the management duties contemplated by the FLSA." (Doc. 45 at 11; Doc. 49 at 8). Plaintiff, however, listed his own duties and responsibilities on his resume found in Defendants' computer system in a more expansive manner. (Doc. 48-5 at 2). Duties listed therein include, but are not limited to:

- Maintain production rate in a fast paced work environment
- Prepare itinerary for drivers delivery and pickups
- Train new employees
- Supervise warehouse employees
- Oversee daily upkeep in warehouse

(Doc. 48-5 at 2).

As described in Plaintiff's own resume, his duties are akin to those of an exempt management employee set forth in DOL regulations. *See* 29 C.F.R. § 541.102. Plaintiff, however, explains that he only created the resume at the direction of Defendants' manager of business development and "disputes that the contents of the document at issue accurately reflects the job duties that Plaintiff performed[.]" (*See* Doc. 49 at 8-9; PCSOF at 18-19 (citing Doc. 50-3 at 17-18)). The Court previously found that there was a genuine dispute as to whether Plaintiff's primary duty was management of the warehouse, rather than operating a forklift, and need not to repeat its analysis here. *See supra* Part IV(A)(1)-(2).

Defendants further contend that the warehouse is a "customarily recognized department or subdivision" of the moving business. (Doc. 47 at 11). Thus, the primary duty of managing a warehouse in certain circumstances satisfies requirement two of the executive exemption. (*See id.* at 11-12). Indeed, other courts have routinely found that the role of warehouse manager does in fact satisfy requirement two and the exemption as a whole when the other requirements are met.[3] Thus, because a jury could find that Plaintiff

---

[3] *See, e.g.*, *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 560 (2d Cir. 2012) (holding that a group of warehouse "captains" in an employer's warehouse fell within the scope of the executive exemption even though the captains only exercised supervisory responsibility over teams of warehouse "pickers," which the Court determined to be customarily recognized departments of the employer); *Velazquez-*

fell within this definition of a warehouse manager, Plaintiff has failed to establish he is entitled to summary judgment on this issue. However, Plaintiff has established (in response to Defendants' Motion) a disputed issue of fact as to whether his duties met with these other courts' definitions of "warehouse manager." Accordingly, the Court finds that there is a jury question as to whether Plaintiff's primary duty was management of a customarily recognized department of the enterprise.

## 2. Requirement (3): Customarily Direct Two or More Employees

Next, Plaintiff disputes that he customarily and regularly directed the work of two or more full-time employees. (Doc. 45 at 11). The relevant DOL regulation explains that "[t]he phrase 'two or more other employees' means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent." 29 C.F.R. § 541.104. Plaintiff asserts that only two other employees worked in the warehouse during Plaintiff's employment with limited overlap and one of them was part-time, making it impossible for Defendants to satisfy requirement three. (*See* Doc. 45 at 11 (citing PSOF at ¶¶ 21)). Defendants, however, provide that Plaintiff customarily supervised "[v]arious drivers and drivers' helpers," conducting loading, unloading, and packing activities in the warehouse for at least 20 hours per week, in addition to the one full-time and one-part time regular warehouse staff member. (Doc. 47 at 14-15). The relevant DOL regulation allows Defendants to aggregate time spent supervising multiple part-time employees to satisfy requirement three. *See* 29 C.F.R. § 541.104.

Plaintiff further "disputes that he managed or supervised any employees" at all. (Doc. 45 at 11). Plaintiff argues that Patrick Kyle, Defendants' operations manager, had

---

*Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 14 (1st Cir. 2007) (holding that a warehouse manager qualified for the executive exemption because he "was 'in charge of the warehouse, and ... everything that dealt with the warehouse, purchase, sales, dispatch, reporting, everything that the warehouse entailed.'"); *Branstetter v. Gen. Parts Distribution, LLC*, No. 3:12-CV-02328-KI, 2013 WL 6780672, at *1 (D. Or. Dec. 19, 2013) (finding that a "Warehouse Manager Trainee" fell within the scope of the executive exemption even though the employee estimated that "he spent about ten percent of his time supervising the employees under his direction. The rest of the time, he did manual labor, including picking parts, unloading pallets, and driving the forklift.").

sole supervisory authority over any potential subordinates who worked with Plaintiff in the warehouse. (*Id.* at 12 (citing PSOF at ¶¶ 21)). Defendants, however, dispute this assertion with alternative deposition testimony pointing to Plaintiff as the other warehouse staff members' supervisor (*See* DCSOF at ¶¶ 21; *see also* Doc. 48-1 at ¶¶ 36; Doc. 54-2 at 5-6). Accordingly, there is a question reserved for the fact-finder as to whether Plaintiff customarily and regularly directed two or more full-time employees during his employment.

### 3. Requirement (4): Hiring, Firing Decisions

The relevant DOL regulation provides that in assessing whether an employee's recommendations as to hiring, firing, or otherwise changing the employment status of other employees are given "particular weight," a court should consider "whether it is part of the employee's job duties to make such suggestions and recommendations [and] the frequency with which such suggestions and recommendations are made or requested." 29 C.F.R. § 541.105. The regulation goes on to provide that an employee's input may still have particular weight "even if the employee does not have authority to make the ultimate decision." *Id.*

Here, Plaintiff argues that Defendants fail to satisfy requirement four because Plaintiff never hired or fired any employees of Defendants, nor did he make such recommendations. (*See* Doc. 45 at 12-13; *see also* PCSOF at ¶¶ 33). Defendants unequivocally admit this fact. (*See* DCSOF at ¶¶ 18-19). Defendants, however, argue that just because Plaintiff never exercised his authority to provide hiring or firing recommendations to management does not mean that he did not have such authority or duty. (*See* Doc. 47 at 15-16). Plaintiff was only employed by Defendants for approximately nine months, so Defendants contend that the opportunity to advise on personnel decisions never arose during this time even though it was one of Plaintiff's general duties. (*Id.* at 16 (citing Doc. 48-1 at ¶¶ 37-40). Given the short duration of Plaintiff's employment, the Court finds a disputed issue of fact as to whether Plaintiff maintained hiring and firing authority or whether his suggestions held particular weight.

Accordingly, there is a question reserved for the fact-finder as to requirement four and whether Plaintiff falls under the executive exemption.

## C. Damages

If Plaintiff prevails in proving liability, there is an open question on the issue of damages. The relevant DOL regulation provides that an employer is responsible for maintaining records containing "[h]ours worked each workday and total hours worked each workweek" for all employees subject to overtime provisions. 29 C.F.R. § 516.2. The Ninth Circuit has recognized that an employer's lack of records cannot "penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, Portal–to–Portal Act of 1947, Pub. L. No. 80–49, 61 Stat. 84, *as recognized in Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 519 (2014)). In this situation, an employee must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens Pottery Co.*, 328 U.S. at 687. Upon such a showing, the burden then shifts to the employer to produce "evidence of the precise amount of work performed or . . . negate the reasonableness of the inference to be drawn from the employee's evidence." *Id*. at 687-88.

Here, Defendants admit that it does not have precise records proving the hours that Plaintiff actually worked. (*See* PSOF at ¶¶ 16; DCSOF at ¶¶ 16). Defendants, however, do maintain alarm code records showing when the warehouse was opened and closed. (*See* Doc. 52 at 8). Defendants may use this evidence, as relevant, to rebut Plaintiff's testimony of his own hours worked. *See Mt. Clemens Pottery Co.*, 328 U.S. at 687-88. Defendants further contend that Plaintiff failed to account for any breaks in his regular weekly schedule, such as holidays or sick days. (DCSOF at ¶¶ 11, 22). Plaintiff's calculation of the number of hours he worked for Defendants also fails to account for any lunch breaks in his weekly schedule. (*See* PSOF at ¶¶ 14; Doc. 46-1 at 7-8). Plaintiff

argues that his damages are "certain and easily calculated" based on the estimated work schedule he provided, but the Court finds that Defendants put the reasonableness of Plaintiff's hours worked estimations in question. (*See* Doc. 52 at 9). Accordingly, there is a genuine dispute as to the number of hours Plaintiff worked for Defendants.[4]

## V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that Plaintiff fits within the executive and administrative exemptions provided by the FLSA. (*See* Doc. 47 at 8-9). If either exemption applies, then Defendants do not owe Plaintiff overtime pay under the FLSA. In analyzing Defendants' Motion, the Court will not repeat the law on each issue discussed at length above, but only the relevant factual distinctions. *See supra* Part IV.

### A. Administrative Exemption

First, Defendants argue that Plaintiff qualifies as exempt under the administrative exemption. *See* 29 C.F.R. § 541.200(a). Plaintiff disputes whether Defendants prove requirements two and three of the administrative exemption. (*See* Doc. 49 at 15). "[B]ecause the test to qualify for the administrative exemption under FLSA is conjunctive, not disjunctive," Plaintiff creates a disputed issue of fact requiring the Court to deny Defendants' Motion if the Court finds that Defendants fail to satisfy their burden as to any requirement of the exemption. *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 15-16758, 2017 WL 2855084, at *1 n.1 (9th Cir. July 5, 2017).

#### 1. Requirement (2): Non-manual Work, Business Operations

As to requirement two, the Court recognized above that there is a disputed issue of fact as to what Plaintiff's primary duty actually was. *See supra* Part IV(A)(1)-(2). Just as Defendants' argument that Plaintiff's primary duty was managing the warehouse survives summary judgment, Plaintiff's argument—supported by the deposition testimony of Defendants' manager of business development—that his primary duty was operating a forklift because that is how he spent the majority of his time at work similarly creates an

---

[4] As a result, the Court also will not reach Plaintiff's liquidated damages argument at this time. (*See* Doc. 45 at 16).

issue of fact when construing all disputed facts in the light most favorable to Plaintiff. (*See* Doc. 45 at 13; *see also* PCSOF at ¶¶ 23). Further, the Court finds that there is a disputed issue as to whether Plaintiff's forklift work constitutes manual labor. (*See* Doc. 45 at 13). Accordingly, the Court finds that Defendants fail to carry their burden to prevail on summary judgment under the administrative exemption. In finding that Defendants cannot carry their burden to prove that Plaintiff's primary duty was the performance of non-manual work related to Defendants' general business operations, the Court need not analyze whether Defendants satisfy requirement three of the administrative exemption because test is conjunctive.[5]

### B.    Executive Exemption

Next, Defendants argue that Plaintiff falls under the executive exemption. 29 C.F.R. § 541.100(a). Plaintiff disputes whether Defendants meet requirements two, three, and four of the executive exemption. (*See* Doc. 49 at 8). The test to determine whether an employee qualifies for the executive exemption is also conjunctive. *See, e.g.*, *McKeen-Chaplin*, 2017 WL 2855084, at *1 n.1. Accordingly, Plaintiff creates a disputed issue of fact requiring the Court to deny Defendants' Motion if the Court finds that Defendants fail to satisfy their burden as to any requirement of the executive exemption.

### 1.    Requirement (2): Management of the Enterprise

Again, the Court previously recognized a disputed issue of fact as to Plaintiff's primary duty. *See supra* Part IV(B)(1). Defendants nearly state as much in conceding that "there might be a factual dispute over Plaintiff's qualification as an exempt employee as an executive." (Doc. 51 at 3). Defendants argue that Plaintiff's resume lists several duties befitting an executive according to the relevant DOL regulation (29 C.F.R. § 541.102), such as training new employees, supervising employees, and monitoring production

---

[5] But consistent with the Court's findings above, the Court acknowledges that the disputed issue regarding Plaintiff's primary duty necessarily informs whether Plaintiff exercised independent judgment over matters of significant (requirement three). *See supra* Part IV(A)(3). Accordingly, the Court finds that there is also a disputed issue of fact reserved for the fact-finder to determine whether Plaintiff's primary duty included the exercise of independent judgment, and, if necessary, whether oversight of the warehouse qualifies as a matter of significance to Defendants' business.

records. (Doc. 47 at 12). Plaintiff, however, provides evidence that his primary duty of operating a forklift to move items in accordance with company policies does not clearly fall within that description. (*See* Doc. 49 at 9). While Defendants point out that other courts have recognized that employees holding the title of "warehouse manager" qualify for the executive exemption, whether a specific employee falls within the exemption is a "mixed question of law and fact" based on individual circumstances. *See supra* note 3; *see, e.g.*, *Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 307 (Alaska 2014).

Here, the Court finds that there is a disputed issue of fact as to whether Plaintiff's primary duty was the management of the warehouse. Under the conjunctive executive exemption test, the Court need not answer whether the warehouse qualifies as a customarily recognized department of the enterprise to completely satisfy require two or whether Defendants carry their burden on requirements three and four of the executive exemption.[6] Accordingly, the Court finds that Defendants fail to carry their burden to prevail on summary judgment under the executive exemption.

## C. Loader Exemption

Finally, Defendants first mention that Plaintiff qualifies as exempt "as an employee of a motor carrier" in Defendants' Reply (Doc. 51), but makes no further mention of the motor carrier exception in that document.[7] Defendants later argue in the Response to Plaintiff's Motion (Doc. 52) that Plaintiff qualifies as an exempt "loader" under 29 C.F.R. § 782.2.[8] The application of an FLSA exemption "is a matter of

---

[6] Again, consistent with the Court's findings above, the Court acknowledges that there are also disputed issues of fact as to whether Plaintiff directed the work of at least two full-time employees and whether Plaintiff had the authority to hire or fire other employees or provide recommendations of particular weight on personnel decisions. *See supra* Part IV(B)(2)-(3). Any one of those disputed issues is sufficient for Plaintiff to prevent the Court from granting summary judgment on the executive exemption.

[7] Defendants do not even mention the "loader exemption" in its Reply, nor do Defendants cite to any statute or regulation supporting the notion that "an employee of a motor carrier" qualifies as an exempt employee. (*See generally* Doc. 51). The Court can only assume that Defendants' bald characterization of Plaintiff as an employee of a motor carrier refers to the loader exemption because Defendants pick up that argument for the first time in their Response to Plaintiff's Motion (Doc. 52).

[8] For this proposition, Defendants cite *McClendon v. B & H Freight Servs., Inc.*,

affirmative defense." *See Corning Glass Works*, 417 U.S. at 197 (citations omitted). An affirmative defense is one that "the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008) (citations omitted); *see also* Fed. R. Civ. P. 8(c) (Generally, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense").

Here, Defendants' Answer to Plaintiff's Complaint (Doc. 14) specifically alleges affirmative defenses, including exempt status under the administrative and executive exemptions "per 29 C.F.R. § 541.100-203 et seq." (Doc. 14 at 2). Nowhere in their Answer do Defendants assert the loader exemption or the relevant regulation (29 C.F.R. § 782.2) as an affirmative defense. *See id*. The Court finds that because Defendants did not assert this affirmative defense in their pleadings, they are therefore precluded from doing so now. Accordingly, the Court will not consider the merits of this untimely argument.

**VI.     CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 45) is **DENIED**.[9]

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 47) is **DENIED**. The Clerk of the Court shall not enter judgment at this time.

Dated this 21st day of August, 2017.

_____
James A. Teilborg
Senior United States District Judge

---

910 F. Supp. 364, 366 (E.D. Tenn. 1995) (citing 29 C.F.R. § 782.2(b)(2)(i)) ("[i]f an employee fits within the classification of loader, the [overtime] exemption applies").

[9] The Court observes that Plaintiff asks for a declaratory judgment (listed as "Count Two") in the Complaint. (Doc. 1 at 9-10). Neither Plaintiff nor Defendants addressed the declaratory judgment action in their respective motions for summary judgment.